Hall, *et al, vs.* The State.—1842.

ment of appellant's claim. That question has been disposed of in the opinions expressed in the previous case, and it is now therefore made to appear, that the order would have been rightfully made upon *E. M. Dorsey,* the first trustee. But we cannot agree, that the failure so to make it, affected the validity of the claim.

The judgment of the Chancery Court is effectually pronounced on a claim by confirming the auditor's report, and if no steps are taken to revoke or overrule such judgment, it is as conclusive as if it had been accompanied with an order on the trustee to pay the amount. After such adjudication upon the the rights of the party, an order to pay, would at any time be passed as a matter of course.

The court, for the reasons assigned in the previous case, do not regard the other grounds of objection sufficient to defeat the appellant's right to recover, and will therefore sign a decree which shall, pursuant to the agreement in this cause, remand the case to the Chancery Court, that an account may be taken of the assets of the original defendants, and such other proceedings be had as may be necessary to give to the appellant the relief to which he is entitled.

DECREE REVERSED WITH COSTS, AND CAUSE REMANDED.

RANDALL HALL AND OTHERS *vs.* THE STATE—BENJAMIN T. PINDLE, INFORMER.—*June,* 1842.

Where a justice of the peace, professing to act under the authority of an act of Assembly, adjudges a fine to be due, the party sentenced may remove the sentence to the county court by writ of *certiorari,* and the *certiorari* being there quashed, and the cause remanded, the same party may by writ of error bring the record from the county court to the appellate court, where, if the justice have no jurisdiction, the judgment of the county court will be reversed, and the proceedings quashed.

Writ of ERROR to *Anne Arundel* County Court.

On the 17th February, 1842, the plaintiffs in error filed their

petition, addressed to the judges of *Anne Arundel* county court, stating, that on the 15th day of February, 1842, *W. G.,* *esquire,* one of the justices of the *State of Maryland,* in and for *A. A.* county, adjudged and ordered that they pay the sum of fifty dollars per week, commencing from the first day of January, 1837, up to the said 15th day of February, for having come into this State, contrary to the act of Assembly, passed at December session 1831, chap. 323, a copy of which order and judgment they herewith submit as a part of their petition, by which they aver, that they have suffered wrong, for that the said justice had no jurisdiction in the premises, and the said judgment is in other respects erroneous, as they are advised. They, therefore, pray your Honors to grant to them the writ of *certiorari,* to be issued by the clerk of *Anne Arundel* county court, and directed to the said *W. G., esquire,* ordering and commanding him to certify and return his judgment, and all other proceedings in the premises, touching your petitioners, to this honorable court, to be heard, adjudged and determined by this honorable court, as to law and justice shall appertain.          CORNELIUS MCLEAN,

          THOS. S. ALEXANDER, *for Petitioners.*

To this petition was appended an affidavit by one of the attorneys of its truth.

The judgment referred to was as follows :

STATE *vs.* RANDALL HALL, KISSEY LANE, HENRY LANE, RICHARD LANE, MARY LANE. *February* 15, 1842. It is on this 15th day of February, 1842, adjudged and ordered, that *Randall Hall, Kissey Lane, Henry Lane, Richard Lane, Mary Lane,* pay the sum of fifty dollars per week, commencing from the 1st of January, 1837, up to this time, for having come into the State contrary to the act of Assembly, passed at December session 1831, chap. 323. Witness my hand and seal, this 15th day of February, 1842.          W. GLOVER, (Seal.)

The Honorable *Nicholas Brewer, A. J.,* of *A. A.* county court, ordered the *certiorari* as prayed. It was issued on the 17th February, 1842, directed to *W. G., Esq., J. P.,* and commanded him to send under his hand and seal, the record of

Hall, *et al, vs.* The State.—1842.

the proceedings aforesaid, in the plea aforesaid, with all things touching the same, &c., unto the county court, &c., to be held on the 3rd Monday of April next, at, &c., when both parties appeared in the county court—and the justice aforesaid, made his return to the court with the writ aforesaid, as follows :

STATE OF MARYLAND—BENJAMIN T. PINDLE, INFORMER, *àgst.* RANDALL HALL, KISSEY LANE, HENRY LANE, RICHARD LANE AND MARY LANE. *February* 15, 1842. This case having been heard and considered, it is this day adjudged and ordered, that *Randall Hall, K. L., H. L., R. L.* and *M. L.*, who have been proved before me to be free negroes immigrating to this State from the State of *Virginia*, in the year 1836, and remaining in it contrary to the provisions of the act, entitled, an act relating to free negroes, passed at December session 1831, chap. 323, each pay to the sheriff of *Anne Arundel*, the sum of fifty dollars per week, for each and every week, commencing from the 1st day of January, 1837, and ending the 10th day of February, 1842, and each and every of said negroes refusing or neglecting to pay said fine, to be sold by the said sheriff at public sale, for such time as may be necessary to pay said fine, he first giving ten days notice of such sale. The said sheriff, after deducting prison charges, and a commission of ten per centum, to pay over one-half of the nett proceeds to the informer, and the balance to the county commissioners, for the use of the county.

WM. GLOVER.

To this was appended the certificate of said justice, under his hand and seal—"that by virtue of the annexed writ, to me "delivered, hereby certify the record and proceedings in the "suit in the said writ mentioned, unto *Anne Arundel* county "court, together with all things touching the same, as fully "and wholly as the same is now depending before me." Given, &c.

Thereupon, the State prayed that the said writ of *certiorari* be quashed, and a procedendo awarded to the said justice, because—

1st. The county court has no jurisdiction to order the writ

of *certiorari*, to bring the proceedings of the justice before them in the present case for revision.

2nd. Because conceding the power of the court to issue the writ, still as the justice had jurisdiction to pass the judgment which he has returned, this court cannot interfere with such judgment, and should award a procedendo.

The county court (Dorsey, C. J., and Brewer, A. J.,) quashed the writ of *certiorari*, and remanded the cause to the justice for further proceedings, upon which the writ of error was sued out from the Court of Chancery.

The act of 1831, chap. 323, sec. 1, under which the judgment in this case was rendered, declared, "that after the pas- "sage of this act, no free negro or mulatto shall immigrate or "settle in this State; and no free negro or free mulatto, be- "longing to any other State, district or territory shall come "into this State, and therein remain for the space of ten suc- "cessive days, whether such free negro or mulatto intends set- "tling in this State or not, under the penalty of fifty dollars "for each and every week, such person coming into, shall there- "after remain in this State; the one-half to the informer, and "the other half to the sheriff, for the use of the county, to be "recovered on complaint and conviction before a justice of the "peace of the county in which he shall be arrested; and any "free negro or mulatto refusing or neglecting to pay said fine "or fines, shall be committed to the jail of the county, and "shall be sold by the sheriff at public auction, for such time "as may be necessary to cover the aforesaid penalty," &c. *See* act of 1839, ch. 38, *post*, 335.

The writ of error was argued before Buchanan, C. J., Ste- phen, Archer, Chambers and Spence, J.

At this term, the defendants in error moved to dismiss the writ.

Murray, in support of the motion, maintained—that error would not lie in this case upon the principles of the common law, out of which the court could not look. The whole orig- inal jurisdiction of this State, in criminal matters, is vested in

the magistrates' and county courts. These have a jurisdiction by statute, and all the courts of criminal jurisdiction are on a level, except where appeals are given by act of Assembly. There is no case of a writ of error from the county courts, directed to the magistrates' courts, yet the county courts have the powers of the Court of King's Bench, *Latrobe*, 107, except where restrained by statute directly, or by judicial construction. The authority given to the justice to try this case is an exclusive power, and independent of the county court. No appeal is given. *Hartley, qui Tam. vs. Hooker, Cowper*, 523. Where a new offence is created, and directed not to be tried according to the course of the common law, writ of error will not lie. 2 *Coke*, 288, *b*. Error lies to pronounce upon the error of a court of record—error of judgment only. But the justice is not a court of record. A *certiorari* will not lie where error will. 1 *Salk*. 63, 144. A writ of error lies to an inferior court, which proceeds according to the course of the common law. Writs of error lie only to courts of common law. 2 *Co. a*, 260. Then, are the proceedings in this case according to the course of the common law? It is a summary proceeding; no pleadings; no trial by jury; not according to the course of that law. Error will not lie then. Has the cause been amended by the action of the county court? The *certiorari* was error. Again, error will not lie where the proceedings in any of their stages are not according to the course of the common law. *Melvin vs. Bridge*, 3 *Mass*. 305. *Ruhlman vs. Commonwealth of Penn*. 5 *Binny*, 24.

A *certiorari* is not in the nature of a writ of error, and there has been one review already of this cause in a court of superior jurisdiction. Will this court in effect sanction a double appeal? The case of *W. & S. Rail Road Co. vs. Coudon*, 8 *Gill & John*. 443, shows the duty of the county court where no appeal is given in cases of condemnation, and so here.

ALEXANDER, against the motion to dismiss——

The *certiorari* issued properly. May error then act on that writ, and the judgment upon it. Does the further remedy

exist? *Certiorari* is a common law writ, and proceeds from a common law court. Our object is to review the judgment of such a court, and no more. 4 *Inst.* 21. 6 *Comyn Dig.* 441. 10 *Viner*, 22. 3 *Black*, 34, 411. *Fitzh. N. B.* 21.

In 1 *Lev.* 149, *Cornhill's* case. The judgment of an inferior court was removed by *certiorari* to the *King's Bench*, and then by error to the House of Lords. 2 *Salk.* 504.

In *New York*, a more extensive jurisdiction is exercised. *Clason vs. Shotwell*, 12 *John.* 31, 43, 60, 66. *Melvin vs. Bridge*, 3 *Mass.* 305. *Ruhlman vs. Commonwealth of Penn.* 5 *Binny*, 24. This case merely shows, that appeal is not the remedy. 8 *G. & J.* 443.

There is no case, civil or criminal, in which the record disclosed error in matter of law, in which this court has refused to exercise the reviewing power.

1. An appeal will lie on a motion in arrest of judgment— or writ of error will lie, and it is not so in *England*. *Charlotte Hall School vs. Greenwell*, 4 *G. & J.* 407. *Noland vs. Ringgold*, 3 *H. & J.* 216.

2. An appeal will lie from a judgment on an award.

3. Upon a case stated an appeal will lie, and it is not necessary to reserve the right of appeal.

4. Various cases, not according to the course of the common law. Motions to quash executions. Appeals allowed in various cases distinguishable from the *English* rule. The counsel here referred to—*Nesbit vs. Dallam*, 7 *G. & J.* 494. *Harden and Carson vs. Moores*, 7 *H. & J.* 4. *Charlotte Hall School vs. Greenwell*, 4 *G. & J.* 408. *Waters vs. Duvall*, 6 *G. & J.* 76. *Turner vs. Walker*, 3 *G. & J.* 377. *Wall vs. Wall*, 2 *H. & G.* 81. *Johnson vs. Medtart*, 4 *H. & J.* 24. *Michael vs. Schrœder*, 4 *H. & J.* 227. *Queen vs. Neale*, 3 *H. & J.* 158. Error apparent on the face of the record will be reviewed. *Queen vs. The State*, 5 *H. & J.* 232.

Error lies *ex debito justitiæ.* There are many offences over which some of our judicial institutions have exclusive jurisdiction, and the citizen would be without redress for excess of jurisdiction, usurpation—if the principles of this motion were to prevail.

J. Johnson in reply—

This court has no jurisdiction over the county courts, sitting in review over the proceedings of magistrates. In such cases no appeal is given by the act creating this offence. The case in 3 *Mass.* 305, is like the one at bar, and in *Williamson vs. Carnan,* 1 *Gill & John.* 196, the extent of this authority is stated. *Ruhlman vs. Commonwealth,* 5 *Binny,* 24. *Isaac vs. Clarke,* 9 *G. & J.* 107, are conclusive of this motion.

The court having overruled the motion to dismiss the writ of error, the cause was further argued.

By Alexander, for the plaintiff in error.

We are concerned here with the judgment, the conviction pronounced by the justice. It took place under the 1st section of the act of 1831. By the act of 1839, chap. 38, an additional supplement to the act of 1831, "no free negro or mulatto belonging to or residing in any other State, shall come into this State, whether such free negro or mulatto intends settling in this State or not, under the penalty of twenty dollars for the first offence," and no free negro or mulatto shall come into this State a second time where he or she has been arrested under the provisions of this act, under the penalty of five hundred dollars—one-half, &c., to be recovered on complaint and conviction before the county court of the county, or during the recess of the orphans court of said county in which he or she shall be arrested—on refusal to pay the offender, to be committed and sold, "to serve in the character and capacity of a slave," &c.

If the whole, or any part of the act of 1831, is inconsistent with the act of 1839, it is repealed. Under the first act, no negro can come into *Maryland* and there remain ten days— under the latter, the coming in is the offence; the first relates to States, districts or territories—the latter only to States from whence, &c. The one imposes a penalty of $50; the other of only $20. The first gives jurisdiction to a single justice; the latter to the county courts and orphans court. The act of 1831 imposes a fine only on the first offence. That of 1839 creates

a second offence. In the one case, the offender is to be sold for a fine; in the other "as a slave for life;" and lastly, the penalty when received is differently distributed.

Then this was no offence at common law. It was first made an offence by the act of 1806, chap. 56. 9 *Law Lib.* 32. 1 *Eng. Crown cases,* 429. *Miller's case,* 1 *Sir. W. Black,* 451. *Rex vs. Edward Caton,* 4 *Burr.* 20, 26.

Where a subsequent statute revises the whole subject matter of a former one, and is intended as a substitute for it, it is a repeal. *Leach Cro. Cases,* 253. *U. S. vs. Passmore,* 4 *Dallas,* 372.

A second penalty, enacted for the same offence, is a repeal of the first; there is no right of election in the public to proceed for either. *Nichols vs. Squire,* 5 *Pick.* 168. *Commonwealth vs. Cooly,* 10 *Pick.* 39.

There can be no judgment for a penalty except under a law in force at the time of the judgment. *Commonwealth vs. Marshall,* 11 *Pick.* 350.

The act of 1839 is a repeal of the act of 1831. They are inconsistent with each other, which disposes of this proceeding.

S. PINKNEY, for the defendant in error, referred to the acts of 1806, *ch.* 56; 1831, *ch.* 323; 1839, *ch.* 38, and maintained that the act of 1839 was merely a supplement to the act of 1831, and not designed upon established rules of construction to interfere with it. The first related to cases coming in and remaining, and imposed a higher penalty than upon those who merely came in. and did not remain ten days, but remained long enough to incur the penalty of the lesser amount under the act of 1839. He cited *Dwaris on Stat.* 631. 1 *Salk.* 263.

MURRAY, on same side—

The writ of *certiorari* improperly issued. The magistrate, with reference to this offence, is not an inferior court, and hence not amenable to that writ. Neither is his a court of common law, nor of record, and there is no record to certify to the county court. *Fitz. N. B.* 2 *Co Lit.* 260, *a.* *Evans' Practice,* 384.

Cases in which the writ of *certiorari* has been granted in *Maryland* will be found in 1 *Harr. & McHy.* 186. 3 *Harr. & McHy.* 122, 348. It was refused *Ibid*, 352.

It is said in *Kilty's* report on the statutes, 278, "If on *certiorari* it be returned that the prisoner is condemned by judgment, he shall be remanded. 2 *Hen.* 5 *st.* 1, *ch.* 2.

There was no notice of intent to sue out *certiorari*. *Commonwealth vs. Downing*, 6 *Mass.* 72. 1 *Burr.* 1840, *Hartly vs. Hooker, Cowper*, 523.

There is a right vested in the informer under the act of 1831, and the Legislature cannot repeal it. 2 *Lev.* 227. 3 *Black*, 160.

McLEAN in reply—

The act of 1839 was a merciful modification of the act of 1831. It assumed that a single penalty of twenty dollars might keep this class of persons out of the State; a penalty which they could pay, and be not subject to sale as slaves. Both cannot be in force, occupying common ground, and imposing penalties for the same act. *Cro. Jac.* 644. *Leach Cro. cases*, 252, 253.

The judgment was passed in 1842. It was for a money penalty, a debt accruing weekly from 1837, until the rendition of the judgment. By the act of February, 1777, chap. 6, it is declared, that no "prosecution or suit shall be commenced "for any fine, penalty or forfeiture, unless within one year from "the time of the offence committed." The judgment upon its face is barred by that act. This court cannot deal with it or modify it. The facts of the cause are not here, and this court has no jurisdiction to examine them. It cannot decide from what period, if any, within the year, the penalty should commence. The parties were in *Maryland* when the act of 1839 went into operation, and there is no case under that act.

The writ of *certiorari* is essential to the liberty of the citizen; it is especially so in those cases of summary jurisdiction before magistrates with power to fine, imprison and sell, and no remedy by appeal secured. It goes to courts of record with cause; and to courts not of record as a matter of course, to correct their errors in matters of law, and indeed is never withheld.

The statute 2 *Hen.* 5, does not apply to this State.    As to the nature of the writ, he cited 2 *Comyn Certio. A. No.* 1, 187. 1 *Lord Ray*, 580.   1 *Salk.* 544.

BY THE COURT—

Judgment of *Anne Arundel* county court *reversed*, and judgment of the justice of the peace *quashed* for want of jurisdiction.

---

WILLIAM HOUSE *vs.* SAMUEL WILES.—*June*, 1842.

The record of a decree of a court of equity for the sale of land, in which infants are concerned, upon the allegation that it was not susceptible of division between them and the other parties interested therein, is admissible as evidence in another action, as a link in a chain of title in behalf of a purchaser under the decree, although no testimony was taken in the cause in which it was pronounced, nor other proof than the answers of the infants by guardian admitting the facts of the bill.

APPEAL from *Frederick* county court.

This was an action of ejectment brought by the lessee of *William House* against *Samuel Wiles*, tenant in possession, on the 19th February, 1833, to recover a tract of land.    The defendant pleaded not guilty, and took defence on warrant.

At the trial of the cause the plaintiff offered evidence of his title, which included, among other documents, the record of certain proceedings on the equity side of *Frederick* county court, to sell the real estate of a certain *Daniel House*, on the ground that it would not admit of division among all the parties entitled, without injury and loss to all concerned; but that it would be for the interest of all said tenants in common, to have the said real estate sold by a trustee appointed for that purpose, and the money, the proceeds, distributed under the direction of this court as a court of equity.    Prayer accordingly. The bill alleged that several of the defendants were infants, who answered the bill by a guardian appointed for that purpose, under a commission from *Frederick* county court, and admitted all the facts charged.    The adult defendants con-