## HENRY WINDWART *vs.* ALEXANDER ALLEN.

Courts of equity do not lightly interfere with judgments at law, and relief will not be granted if the party has had an opportunity of making his defences in the courts of law.

Intendments will be made in support of the acts of ministerial officers, where they appear by the *return of process* to have discharged their duty, and the *onus probandi* rests on the party impeaching such acts.

The officer who served attachments upon a garnishee who was a *German*, having testified that he explained the business to him both in the *English* and *German* language, and was answered in both languages by the garnishee, who also took a memorandum thereof, such evidence is not overcome by proof, that the garnishee understood English very imperfectly.

Under the act of 1832, ch. 302, sec. 5, it is too late, no exception having been taken in the court below, to object, in the appellate court, to testi-

mony, because the witness was the officer upon whom the injunction was served, restraining proceedings upon writs of *fi. fa.* in his hands, and was examined without a previous order of the court.

Upon a bill to restrain execution of judgments of condemnation, in attachments upon judgments of a justice of the peace, the objection that the *attachments* were improperly issued, under the act of 1831, ch. 271, cannot be availed of; it was a defence to be taken, if at all, before the justice, upon the return of the attachments.

APPEAL from the Circuit Court for Baltimore city.

The bill in this case was filed on the 31st of July 1856, by the appellant against the appellee, for an injunction to restrain execution of two writs of *fi. fa.*, issued upon two judgments of condemnation in attachments, obtained by the defendant against the complainant, as garnishee of one Seibert, before Parsons, a justice of the peace of Baltimore county.

The complainant in his bill alleges, that the transactions between himself and Seibert, had been settled, by his giving the latter his two notes, one of which became due and was *paid*, and the other had been *endorsed* by Seibert to a *bona fide* holder, *before* the attachments were *issued*, and has since been paid to the holder, and that he, therefore, owes Seibert nothing. He further alleges, that he is a German, and does not understand spoken English, and that he had no notice of the attachments, and was never informed in any way of his being sued or made a party to any suit, and never had notice to appear in any court; that a man entirely unknown to him, on one occasion inquired of him whether he was indebted to Seibert, to which he replied, "Yes, I owe him $63," the enquirer then said to him, "Don't pay Seibert," to which he replied, that Seibert had obtained a note from him which would soon be due, and this was all the notice, conversation, summons or direction he had about the matter, with any one, until writs of *fi. fa.* were issued upon the judgments of condemnation by Owens, a justice of the peace of Baltimore county, which writs are now in the hand of George W. Chariton, constable, and unless relieved in equity, he will be compelled to pay the amount of the judgments, ($168.34,) not one cent of which does he owe to Seibert. He further charges, that

the attachments were wrongfully and improperly issued, because no judgment had been obtained by the defendant against Seibert, and that Seibert never was a non-resident or absconding debtor; that more than sixty days had elapsed from the date of the judgments of condemnation, before Chariton levied on his property under the writs of *fi. fa.,* during which time he had no notice of the attachments. The bill then prays for an injunction restraining further proceedings upon these writs of *fi. fa.,* which was issued upon bond filed, and served on Allen and Chariton, the constable.

Allen, in his answer, says he has no knowledge of the dealings between the complainant and Seibert, but denies that no judgments were obtained against Seibert before issuing the attachments, and on the contrary avers, that he recovered two judgments against Seibert, on the 4th of November 1855, before King, a justice of the peace of Baltimore city, for the amounts set out in the writs of attachments respectively, that on these judgments attachments were issued by Parsons, a justice of the peace of Baltimore county, on the 8th of April 1856, which were in due form laid in the hands of the complainant as garnishee, and judgments of condemnation rendered thereon, on the 8th of May 1856; that he is informed, verily believes and charges, that at the time of laying said attachments, the officer, Chariton, duly informed and fully gave the complainant to understand the whole nature and extent of the proceedings, and that the complainant did understand the same, and made a memorandum thereof, and that Chariton, not only explained the same to the complainant in English, but also in the German language; and that at the time the attachments were laid, he is informed and verily believes the complainant had money in his hands of Seibert.

The bill and answer were both sworn to, and on the filing of the latter a motion to dissolve was made and testimony taken under a commission, the purport of which is sufficiently stated in the opinion of this court. The court below (KREBS, J.,) dissolved the injunction and dismissed the bill, and the complainant appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Orville Horwitz* for the appellant, argued:

1st. That although no exception appears in the record to the testimony of Chariton, yet that being, in point of fact, a defendant to the injunction, his testimony cannot be used, having been taken without any order of the court.

2nd. That there is no equity in the case on behalf of the appellee, it appearing manifestly, that there was nothing in the hands of the appellant liable to attachment.

3rd. That the appellant is entitled to the relief prayed, because of a mistake on his part as to the object of the visit of the constable, and because of his having received no intelligible notice of the writs of attachment.

4th. That the attachments were issued by a justice *of the county*, on judgments rendered by a justice *of the city*, without any thing appearing to show a compliance with the act of 1831, ch. 271.

*Wm. Alexander* for the appellee, argued:

1st. There is no equity in the appellant's case. It shows a case of *laches* on his part. He had the opportunity to appear and defend the attachments, and failure to do so was his misfortune if not his fault. No averment will be received in equity, contradictory of the officer's return. The remedy, if any, is against the officer for a false return. *5 Md. Rep.*, 365, *Falls, et al., vs. Robinson. 5 H. & J.*, 485, *Hayes vs. Lusby. 10 G. & J.*, 358, *Fowler vs. Lee.*

2nd. Even if the bill presented a *prima facie* case, still the equity is entirely sworn away, and the evidence does not sustain the bill so contradicted, but, on the contrary, sustains all the material averments of the answer. *7 Gill*, 189, *Briesch vs. McCauley.*

3rd. Chariton was a competent witness. He was not a party to the suit, though incidentally affected by the injunction. No one is a party except relief be asked as against him and process be prayed against him, which was not done as to

Windwart *vs.* Allen.

Chariton, and, therefore, no necessity excited for application to the court for leave to examine him as a witness; and even if by any just reasoning he could have been objected to as incompetent, still no exception was made to his competency in the court below, and by the act of 1832, ch. 302, sec. 5, none can be made here.

4th. The point suggested by the appellant, that the proceedings were not according to the act of 1831, has no application to the case; the executions sought to be enjoined, are not the executions on the judgments against Seibert, but on the judgments in attachments against Windwart.

Tuck, J., delivered the opinion of this court.

Courts of chancery do not lightly interfere with judgments at law, and relief will not be granted, if the party has had an opportunity of making his defences. *Fowler vs. Lee,* 10 *G. & J.,* 358. *Prather vs. Prather,* 11 *G. & J.,* 110.

Conceding that the complainant had a defence in bar of the attachment issued and laid in his hands, as a debtor of Seibert, we must inquire whether he had an opportunity of making that defence. Intendments will be made in support of the acts of ministerial officers, where they appear by the return of process to have discharged their duty, and the *onus probandi* rests on the party impeaching such acts. If Chariton's testimony were excluded, as insisted by the appellant's counsel, there would be no evidence to question the constable's return, that could be safely relied on for that purpose. That his evidence must be deemed as properly before us, even if incompetent, is shown by the act of 1832, ch. 302, sec. 5. *Jones vs. Hardesty,* 10 *G. & J.,* 414. This witness states expressly, that he spoke to Windwart both in English and German, and was answered in both languages. It may be, as proved by the witnesses, that Windwart understands English very imperfectly, but they state that he understands it a little when spoken to. Blum's evidence cannot be relied on with much confidence when relating what passed between Windwart and the officer; because he admits that he cannot speak English at all, and, having been examined through an inter-

preter, the probability is, that he understands it very imperfectly when others may be speaking in that language; and, yet he undertakes to narrate what Chariton said in English to Windwart. But as far as Volkmar and Blum testify, they corroborate Chariton. Volkmar says, that Windwart told him he had been inquired of by a man as to his indebtedness to Seibert, and cautioned not to pay the money to him; and Blum says, that the officer showed papers, and directed Windwart to write something on a slate which he did, and that he recollects the name of Alexander Allen, and the county sheriff's office, as having been mentioned by Chariton to Windwart.

Chariton's evidence is direct and positive, that he explained the business to the complainant, in German and in English; that he made memoranda by his direction, on a slate, and that the entry was afterwards explained by Windwart, in English, and was correct. The substance of Behmeir's testimony is, that Chariton speaks the Pennsylvania German, and not the language of the natives, and that all Germans do not understand that dialect; but this ought not to overthrow the statement of Chariton, when he swears to the proper performance of his duty as constable, and shows, if he is believed, that he gave such explanations, and that the party made such memoranda at the time, as were sufficient to have enabled him to appear and answer the process, which it was the business of the officer to serve.

It does not appear that Windwart made any inquiry into the business, until after the judgments of condemnation had been entered and *fi. fas.* issued. If he did not fully understand the nature of it, he might have gone to an interpreter. He knew that Alexander Allen was concerned, according to Blum's testimony, and that the county sheriff's office was the place mentioned by Chariton, yet he does not appear to have gone there or made any inquiry.

Probably Windwart did not comprehend the nature of the business, but ought the plaintiff in the judgments to suffer the consequences of his want of understanding, or of knowledge of our language? It was his own omission to appear to the writs, if the process was served, which we must take to have

been done, from all the evidence in the cause. Apart from'
the positive declarations of the officer, the proof on the part of
the complainant does not overcome the *prima facie* effect of
his return. This case is different from that of *Tabler vs.
Castle*, 12 *Md. Rep.*, 144, where relief was granted, in view
of the peculiar circumstances attending a former action on the'
same cause, so as to have the merits investigated.

The point of the appellant, under the act of 1831, ch. 271,
if available at all, was a proper defence before the justice of
the peace; on the return of the attachment, and cannot aid
the present proceeding. See *Brumbaugh vs. Schnebly*, 2.
*Md. Rep.*, 320.

*Decree affirmed.*

(Decided March 17th, 1859.)