598 A.2d 1208

**Harold Thomas WHITE, Jr.**

v.

**STATE of Maryland.**

**No. 193, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Dec. 6, 1991.

**592**

J. Harrison Phillips, III, Berlin, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and B. Randall Coates, State's Atty. for Worcester County, Snow Hill, on the brief), for appellee.

Argued before ALPERT, BLOOM and WENNER, JJ.

ALPERT, Judge.

This is an appeal in which the appellant contends that first the District Court and then the circuit court erred in refusing to allow him to subpoena the State's toxicologist as a witness in the appellant's trial on charges of driving while intoxicated. We conclude that the appellant's argument is without merit, and accordingly affirm the Circuit Court for Worcester County.

## FACTS AND PROCEEDINGS

On June 18, 1990, Harold Thomas White, Jr. was arrested for driving while intoxicated and for other related offenses. After White's arrest, he was given a document entitled "State of Maryland Notification to Defendant of Result of Test for Alcohol Concentration." It indicated that a breath specimen collected from White within two hours of his arrest "was found to contain an alcohol concentration of .22 grams of alcohol per 210 liters of breath." The notice also certified that the specimen "was obtained and tested using equipment approved by the Toxicologist under the Post Mortem Examiner's Commission." The notice indicated that the test result would be used at trial

> without the presence or testimony of the technician or analyst who performed the test unless the defendant or defense attorney notifies the State's Attorney and the court in writing no later than twenty (20) days before trial that the defendant desires the technician or analyst to be present in court.

White's trial was scheduled for September 13, 1990 in the District Court of Maryland for Worcester County. White's counsel requested the Clerk of the District Court to issue a subpoena to Dr. Yale H. Caplan, the State Toxicologist, to testify at trial in White's behalf. The clerk issued the subpoena on August 1, 1990.

The State moved for a protective order, asking the court to quash the subpoena. The District Court conducted a hearing concerning the State's motion for a protective order and granted the motion on September 6, 1990.

White responded on September 12, 1990 by filing a motion for writ of certiorari in the Circuit Court for Worcester County. The circuit court issued the writ on October 18, 1990.

The circuit court conducted a hearing on November 8, 1990, at the conclusion of which the court denied White's relief. The court's written order, issued December 3, 1990 explained that White

failed to establish sufficient materiality or relevancy for the issuance of a subpoena for Dr. Yale Caplan, Chief Toxicologist for the State of Maryland to appear at Petitioner's trial for Driving While Intoxicated, or that the denial of the issuance of the same by the District Court of Maryland for Worcester County amounts to an unconstitutional deprivation of Petitioner's right to confrontation and compulsory process....

White subsequently appealed the circuit court's decision to this court, arguing that

I. The lower court improperly failed to follow the mandate of section 10–304(d) of the *Courts and Judicial Proceedings Article* by failing to require the state toxicologist to be present and testify as a witness after a timely request for subpoena had been filed by the appellant.

II. The lower court's refusal to issue a subpoena for the state toxicologist denied appellant his constitutional right to have compulsory process for obtaining witnesses in his favor as secured by the Sixth and Fourteenth Amendments to the United States Constitution and articles 21 and 24 of the Maryland Declaration of Rights.

### *The Writ of Certiorari*

■■■ Before we address the important public issues raised by this appeal, we note, as did the State, the appellant's selection of an incorrect method to seek review of the trial courts' decisions. The Circuit Court for Worcester County simply did not have the jurisdiction or authority to review, via writ of certiorari, the District Court's decision sustaining the State's motion to quash appellant's subpoena for the State Toxicologist. The circuit court's jurisdiction to issue a writ of certiorari to a lower court is confined to the purpose of inquiring into the lower court's fundamental jurisdiction or whether the acts of the lower court were unconstitutional. Md.R. K43(2).

## A. *Fundamental Jurisdiction*

■■■ By virtue of the writ of certiorari, the circuit court was authorized to "inquire into the power of a court to decide an issue—not to review its resolution of that issue." *Howard v. State*, 76 Md.App. 447, 450, 545 A.2d 705, *cert. denied*, 314 Md. 193, 550 A.2d 381 (1988). The District Court possessed the fundamental jurisdiction to adjudicate the charges against the appellant and also to determine the merits of the motion to quash. *See* Md.Rules 4–101, 4–265, and 4–266. Thus, the circuit court erred when it reviewed the District Court's ruling on the State's motion. Appellant, had he been convicted by the District Court, had the right of *de novo* appeal to the circuit court, at which time his right to summons the State Toxicologist could be considered anew. Md.Cts. & Jud.Proc.Code Ann. § 12–401(d) (Supp.1991). *Vonoppenfeld v. State*, 53 Md.App. 462, 467, 454 A.2d 402 (1983). *See also A.S. Abell Co. v. Sweeney*, 274 Md. 715, 337 A.2d 77 (1975); 14 C.J.S. *Certiorari* § 13–14; 14 Am.Jur.2d *Certiorari* § 2.

## B. *Unconstitutional Acts*

In his "Motion for a Writ of Certiorari," appellant alleged in pertinent part:

> The granting of the State's Motion to Quash the Subpoena for Dr. Caplan effectively denies Petitioner his constitutional rights of confrontation and compulsory process guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, Articles 21 and 24 of the Maryland Declaration of Rights and Maryland Rule 4–265.

■■■ To the extent that appellant would use the writ of certiorari to establish that the district court acted unconstitutionally in quashing Dr. Caplan's subpoena, his effort is unavailing. As noted in *Vonoppenfeld*, 53 Md.App. at 470, 454 A.2d 402, "the inquiry here is not whether the [district] court rightly decided [appellant's right to compulsory process] but whether it had the [constitutional] right to decide what it did decide." *(quoting New York Mining Co. v.*

*Midland Co.*, 99 Md. 506, 512, 58 A. 217 (1904). We know of no provision of the State or Federal constitution that would preclude the District Court from ruling upon the right to compulsory process or any other constitutional trial right. Were it otherwise, every District Court ruling on such issues as search and seizure, confessions, right to counsel, or confrontation of witnesses would be subject to immediate review upon a writ of certiorari. That is not the law. That is not what the framers of Md.Rule K43 intended.

## WHETHER THE TOXICOLOGIST MUST TESTIFY AT THE APPELLANT'S REQUEST

Md.Cts. & Jud.Proc.Code Ann. § 10–304(d) (1989) (amended Jan. 1, 1990) reads as follows.

(1) for the purpose of establishing that the test of breath or blood was administered with equipment approved by the toxicologist under the Postmortem Examiners Commission, a statement signed by the toxicologist certifying that the equipment used in the test has been approved by him shall be prima facie evidence of the approval, and the statement is admissible in evidence without the necessity of the toxicologist personally appearing in court.

(2) (i) If a defendant desires the toxicologist to be present and testify at trial as a witness, the defendant shall file a request for a subpoena for the toxicologist at least 20 days before the trial in the appropriate court.

(3) A subpoena for the toxicologist may be quashed if a defendant fails to comply with the requirements of this subsection.

(4) A motion to quash a defendant's subpoena may be filed by any party or by the Attorney General.

White wishes to call Dr. Caplan in an effort to challenge the reliability of the testing equipment used to test his breath. He argues that Section 10–304(d), permits a defendant to call as a witness the State Toxicologist, with no

restriction other than the requirement that the subpoena be requested at least twenty days before trial. It does not appear that that precise argument was made to the District Court judge.

■ We note at the outset that White's argument may not be timely raised, *i.e.*, his motion for writ of certiorari and argument thereon presents the issue mentioned above that he did not raise in the District Court. These procedural issues aside, White's argument is unpersuasive. Subtitle 3 of the relevant code provisions governs motor vehicle laws, and sections 10–302 through 10–309 concern the admissibility of chemical tests for intoxication. In *Brice v. State*, 71 Md.App. 563, 526 A.2d 647 (1987), a case involving a driver convicted of driving while impaired, this court had occasion to discuss these provisions and the legislature's underlying intent in enacting them. The court opined that

> [t]his appeal ... betrays a naive failure on [the appellant's] part to appreciate that the very laws he invokes were designed deliberately to facilitate [the appellant's] conviction, not to shield him from what is virtually an unrelenting search for truth in drunken driving cases.

*Id.* at 566, 526 A.2d 647. Although section 10–304(d)(2) did not exist when *Brice* was decided, we find apposite our earlier assessment of legislative intent: the laws here in question were enacted not for the defendant's protection, but for the protection of the public. *See id.* at 568, 526 A.2d 647 (*quoting State v. Moon*, 291 Md. 463, 436 A.2d 420 (1981)); *see also Motor Vehicle Admin. v. Shroder*, 324 Md. 454, 464, 597 A.2d 939 (1991).

■ The administration's intent in proposing the legislation was to forestall the State Toxicologist's problems in responding to subpoenas. That intent is expressed in a letter of March 30, 1989, that Lieutenant Governor Melvin Steinberg wrote to Senator Walter M. Baker, Chairman of the Senate Judicial Proceedings Committee, and then-Delegate William S. Horne, then-Chairman of the House Judi-

ciary Committee. Pertinent parts of the letter read as follows:

I am pleased that the House and Senate have both passed the centerpiece of the Administration's drunk driving legislation—the "administrative license suspension" provision. We have great hopes that this new legislation will help to reduce the problem of drunk driving in our State, and we congratulate you for your efforts. To take full advantage of the opportunity that we have before us, I would like to bring to your attention certain amendments made by both the House and Senate that could impair our efforts to deter this serious problem. I therefore submit the following comments for your consideration.

* * * * * *

In the Administration's original bill we attempted to address certain problems which the State Toxicologist has been facing with unnecessary court summonses.

Our proposal for a 30–day notice for summonses was adopted by the House, but the teeth needed to make the 30–day requirement meaningful were deleted by changing the court's quashing authority from "shall" to "may," which keeps the Toxicologist in the position he is now in of having to litigate each summons. This litigation puts considerable strain on his ability to perform his duties with the Medical Examiner's Office, and also significantly impacts the judicial resources and the Attorney General's resources with no real benefit to the system.

The original intent of the General Assembly was that it would not be necessary or practical for the State Toxicologist to appear in the 20,000 plus potential hearings each year. I recommend that this legislative intent be reaffirmed so that State resources can be better invested, by striking the "may quash" and reinserting "shall quash" on this issue.

Section 10–304(d)(2) was substantially revised during the 1989 legislative session. *See* H.B. 556, ch. 284 (1989), which was amended, in pertinent part, as reflected below:

(e)(D)(1) For the purpose of establishing that the -[—test—]- ~~TESTS OF BREATH, BLOOD, URINE, OR OTHER BODY FLUIDS~~ [-was-]—WERE OF BREATH OR BLOOD WAS administered with equipment approved by the toxicologist under the Postmortem Examiners Commission, a statement signed by the toxicologist certifying that the equipment used in the -[—test has—]- ~~TESTS HAVE~~ been approved by him shall be prima facie evidence of the approval, and the statement is admissible in evidence without the necessity of the toxicologist personally appearing in court.

(2)(I) IF A DEFENDANT DESIRES THE TOXICOLOGIST TO BE PRESENT AND TESTIFY AT TRIAL AS A ~~DEFENSE~~ WITNESS, THE DEFENDANT SHALL FILE A REQUEST FOR A SUBPOENA FOR THE TOXICOLOGIST AT LEAST ~~30~~ 20 DAYS BEFORE THE TRIAL IN THE APPROPRIATE COURT.

* * * * * *

(3) A SUBPOENA FOR THE TOXICOLOGIST ~~SHALL~~ MAY BE QUASHED IF A DEFENDANT FAILS TO ~~MAKE A TIMELY AND PROPER REQUEST UNDER THIS SECTION OR RULE 4-265~~ COMPLY WITH THE REQUIREMENTS OF THIS SUBSECTION.

(4)(I) A MOTION TO QUASH A DEFENDANT'S SUBPOENA MAY BE FILED BY ANY PARTY OR BY THE ATTORNEY GENERAL. ~~UPON SUCH A MOTION, THE DEFENDANT HAS THE BURDEN OF SHOWING THAT THE TOXICOLOGIST'S PRESENCE AT TRIAL AND TESTIMONY IS NECESSARY AND MATERIAL TO THE DEFENSE.~~

Nevertheless, in light of the legislation's original purpose, and considering the fact that the Governor did not veto the subject house bill, it confounds common sense to interpret the amendments in a manner that further burdens the State Toxicologist.

Moreover, we note that Md.Cts. & Jud.Proc.Code Ann. § 10–304(d)(4) (1989) provides that "[a] motion to quash the defendant's subpoena may be filed by any party or by the

Attorney General." We believe that provision must be read in conjunction with Md.Rule 4–266(c), which provides in pertinent part:

Upon motion of a party or of the witness named in the subpoena filed promptly and, whenever practicable, at or before the time specified in the subpoena for compliance, the court may, for good cause shown, enter an order which justice requires to protect the party or witness from annoyance, embarrassment, oppression, or undue burden or expense, including one of the following:

(1) that the subpoena be quashed.

Certain allegations in the State's "Motion for Protective Order" bear repeating here.

2. That there is no reasonable necessity for the testimony of this individual, as he is not a witness to the incident encompassed in these charges and is not essential to the proof of blood alcohol content pursuant to Section 10–302 *et seq.* of the Courts Article of the Annotated Code of Maryland.

3. That to require Dr. Caplan's presence in these types of cases would cause a great hardship and conflict with his primary duties as the Chief Toxicologist for the State of Maryland Office of the Chief Medical Examiner.

4. That the testimony to be elicited from Dr. Caplan can, and properly should be obtained through the services of a consultant toxicologist, retained and paid by counsel instead of employing Dr. Caplan, a State employee, at no cost to defendant.

In support of those assertions, the State argued below: While it is clear that Dr. Caplan has expertise in the area of chemical tests of blood and breath for alcohol content, he has no personal knowledge of the State's case against defendant. Dr. Caplan was not present when the defendant was stopped and he did not observe the defendant taking any type of chemical test for blood alcohol content. Apparently, the defendant intends to call him for (free) expert testimony regarding the chemical breath testing

process. The State submits that such information can be obtained from the State's Toxicologist regulations regarding tests of breath and blood for alcohol which are attached hereto as State's Exhibit 1.

We believe that those points were well taken. The intention of the Legislature is made clear where, as here, the right of the defendant to call the State Toxicologist, on the one hand, is balanced by the State's right, in a proper case, to quash the defendant's subpoena where the testimony that is sought is neither relevant nor material to the issues involved. Reading section 10–304(d)(2) to give to a defendant the unfettered right to subpoena the State Toxicologist could obviously produce an absurd result—possibly requiring the State Toxicologist to attend more than twenty thousand DWI hearings per year. *Cf. Casper v. State,* 70 Md.App. 576, 590, 521 A.2d 1281 (1987) ("We see little utility in requiring the State to produce every technician who touches the chemical breath test process at every prosecution across the State in which alcohol impairment is an issue.")

## COMPULSORY PROCESS

White also argues that the sixth and fourteenth amendments [1] to the federal constitution and articles 21 [2] and 24 [3] of the Maryland Declaration of Rights secure his right to compulsory process, and thereby support his right to subpoena Dr. Caplan.

---

**1.** "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor...." U.S. Const. amend. VI.

**2.** "That in all criminal prosecutions, every man hath a right ... to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath...." Md. Const. art. 21.

**3.** "That no man ought to be taken or imprisoned ... but by the judgment of his peers, or by the Law of the land." *Id.* art. 24

**602** 

 We see no merit in this allegation of error. A defendant's right to compulsory process is not infringed if the witness will not offer competent or material evidence. *See Darby v. State,* 47 Md.App. 1, 421 A.2d 108 (1980), *cert. denied,* 289 Md. 734 (1981). In *Darby,* the appellant's argument was similar to the one in issue here: that the Constitution and the Maryland Declaration of Rights expressly grant a person accused in a criminal case "the right to have witnesses testify on his behalf, and to secure the attendance of witnesses through compulsory process; and that they impose upon the court the duty to summons *any* witness whose presence is requested." *Darby,* 289 Md.App. at 4, 421 A.2d 108.

We wrote in *Darby* that "it is well established in other jurisdictions that the Sixth Amendment right to compulsory process is fundamental but not absolute. State and Federal courts have held that the right is assertable only where the witnesses to be called will offer competent and material testimony." 289 Md.App. at 5, 421 A.2d 108; *see also id.* (collecting cases). The appellant's right to compulsory process was not infringed where it was clear from the proffer that the witnesses's testimony would not be relevant to the issues raised in the defense. 289 Md.App. at 7, 421 A.2d 108.

Not showing a particularized need, White wishes generally to challenge the reliability of breath test results and hopes to use Dr. Caplan's testimony to create a reasonable doubt as to his (White's) guilt. This is not sufficiently material to overcome the State's request for a protective order.[4] We note here that White could obtain similar testi-

---

4. In his brief, the appellant articulated his reasons as to relevancy and materiality as follows:
 As proffered by counsel for the Appellant, Dr. Caplan would testify that he is the State's Toxicologist charged with the duty of testing, evaluating and monitoring breathalyzer machines utilized by the State in drunk driving cases. Dr. Caplan would testify that the breathalyzers utilized by the State over-report breathalyzer results in 14% of all cases. Dr. Caplan would also testify that there are a

mony by producing his own expert witnesses: the evidence he hopes to elicit from Dr. Caplan is of a type that could be acquired elsewhere.

Our decision in *Casper v. State*, 70 Md.App. 576, 521 A.2d 1281 (1987), supports our position here. In *Casper*, we considered whether the appellant's right of confrontation was violated when breath test results were admitted into evidence without accompanying testimony of the technician who checked the test instrument's accuracy. *Id.* at 589, 521 A.2d 1281. "When ... test results bear substantial indicia of reliability and the utility of testimony from a second technician would be remote, a defendant's confrontation right is not violated when the results are admitted without the benefit of that technician's testimony." *Id.* at 591, 521 A.2d 1281. Absent evidence that White's test results were unreliable, and some indication that the State Toxicologist's testimony would be relevant to the allegedly defective test, we perceive no merit to White's grievance.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

number of factors which can produce falsely high results in chemical breath tests. These factors include the questionable accuracy of the 2100 to 1 ratio used in obtaining blood alcohol readings, the variance of that ratio from person to person and within the same person due to differences in alcohol concentration, temperature, breaking patterns and other factors. If believed, Dr. Caplan's testimony could cast significant doubt upon the reliability of the testing equipment used by the State, the challenged results of which establish a *prima facie* case of Appellant's guilt.